[Nos. 12297-5-I; 12390-4-I. Division One. January 21, 1985.]

WOODCREST INVESTMENTS CORPORATION, *Respondent,* v. SKAGIT COUNTY, ET AL, *Appellants.*

BOW HILL LAND COMPANY, INC., *Respondent,* v. THE COUNTY OF SKAGIT, ET AL, *Appellants.*

*C. Thomas Moser, Prosecuting Attorney,* and *John R. Moffat, Chief Civil Deputy,* for appellants Skagit County, et al.

*Philip A. Serka* and *Adelstein, Sharpe & Serka,* for appellant Bow Hill Neighborhood Association.

*Kenneth B. Rice,* for respondent Woodcrest Investments Corp.

*Stephen D. Tangen,* for respondent Bow Hill Land Company.

CORBETT, C.J.—Skagit County and Bow Hill Neighborhood Association (Neighborhood) appeal a writ of certiorari which declared void two resolutions of the County Board of

Commissioners. We affirm as to the Zoning Map Resolution 8737 and reverse as to the Comprehensive Plan Resolution 8736.

Woodcrest Investment Corporation (Woodcrest) owns 314 acres of property in the Bow Hill area of Skagit County. Bow Hill Land Company (Land Co.) owns approximately 78 acres in the same area. Both parcels (the property) are within the Northwest Planning District of Skagit County. The property was originally zoned residential in 1966. The Northwest District Comprehensive Plan was adopted in 1975 and continued the residential designation for the property. In 1979, the County Planning Commission began review of a revised zoning map for five planning districts, including the Northwest Planning District. This review culminated in March 1980, when the Board approved a zoning map designation of residential for Woodcrest's property and residential reserve for the Land Co.'s property.

In June 1980, residents of the Bow Hill area filed a petition asking the Board to down zone the property to rural, requiring 5–acre tracts. The Board responded by calling for the Commission to further study the matter. On February 10, 1981, after considering recommendations of the Commission and testimony received at public hearings, the Board amended the Comprehensive Plan (resolution 8736) and Zoning Map (resolution 8737), down zoning the property to rural–5 acre.

In February and March 1981, the Land Co. and Woodcrest filed their applications for writ of review by the superior court. The applications specifically challenged only the Zoning Map Resolution 8737. No reference was made to the Comprehensive Plan Resolution 8736. The Neighborhood was permitted to intervene. The matter was heard in December 1981. Near the conclusion of the hearing, Woodcrest and the Land Co. moved to amend their writ applications to include a challenge to the Comprehensive Plan Resolution 8736. The court granted the motion to amend and at the conclusion of the hearings granted the writ of

review invalidating resolutions 8736 and 8737 as they related to the property.

The County and the Neighborhood appeal, assigning error to the granting of the motion to amend. The Neighborhood also challenges the conclusion that both resolutions were invalid. The County limits its challenge to the conclusion invalidating the Comprehensive Plan Resolution 8736.

█ When reviewing statutory writs, a superior court is acting in an appellate capacity, and the court has only such jurisdiction as is conferred by law. *Deschenes v. King Cy.*, 83 Wn.2d 714, 716, 521 P.2d 1181 (1974); *Sterling v. County of Spokane*, 31 Wn. App. 467, 470, 642 P.2d 1255 (1982). Skagit County Code 14.04.210(6)(e) requires that the application for writ of review be made within 20 days after entry of the written decision of the Board. It is compliance with the county code that confers jurisdiction upon the superior court. *North St. Ass'n v. Olympia*, 96 Wn.2d 359, 364, 635 P.2d 721 (1981). Woodcrest and the Land Co. complied as to the Zoning Map Resolution 8737 but not as to the Comprehensive Plan Resolution 8736. They attempted to correct this failure by the motion to amend their application to include resolution 8736 within the scope of review.

The court found that Skagit County Code 14.04.210(6)(e) was not included in the copy of the code that the County submitted to the Board and that was certified by the Board to the superior court. On this basis, the court concluded that the County was estopped from asserting it as a defense. The proceedings as to amendment of the Zoning Map and Comprehensive Plan had both been certified in answer to the writ. The court found that adoption of the Comprehensive Plan Resolution 8736 arose out of the same proceeding and was considered on the same record, resulting in similarly worded Zoning and Comprehensive Plan Resolutions by the Board. It granted the motion to amend apparently pursuant to CR 15(c), although that rule was not specifically referred to in the conclusions of law. The

court also found that the motion to amend was made within a reasonable time.

 CR 15(c), however, does not permit relation back if the parties' delay is due to inexcusable neglect, *South Hollywood Hills Citizens Ass'n v. King Cy.*, 101 Wn.2d 68, 77, 677 P.2d 114 (1984); *North St. Ass'n v. Olympia, supra* at 368, or to a conscious decision, strategy or tactic. *Veradale Vly. Citizens' Planning Comm. v. Board of Cy. Comm'rs*, 22 Wn. App. 229, 238, 588 P.2d 750 (1978). The application for a writ challenging the Zoning Map Resolution 8737 was timely. The motion to amend to include the Comprehensive Plan Resolution 8736, filed 10 months after the resolutions were adopted, was not. In fact, 2 months prior to the motion, the County noted in its trial brief the absence of a challenge to resolution 8736. It appears that after a full day of argument at the trial, Woodcrest and the Land Co. believed their challenge to resolution 8737 might hinge upon the validity of resolution 8736. They thus brought the motion to amend. The trial court's ruling that the County was estopped from asserting the timeliness was incorrect in light of the parties' apparent conscious decision not to challenge resolution 8736.

Even if the failure to challenge the Comprehensive Plan Resolution 8736 could be characterized as a mistake, Woodcrest and the Land Co. did not meet their burden of proving it was excusable. *See Anderson v. Northwest Handling Sys., Inc.*, 35 Wn. App. 187, 191, 665 P.2d 449 (1983). All parties to an action have an equal responsibility to be apprised of pertinent court rules, statutes, and ordinances. *See, e.g., South Hollywood Hills Citizens Ass'n v. King Cy., supra* at 78 (failure to implead parties was inexcusable where information was available and the parties simply did not inquire); *North St. Ass'n v. Olympia, supra* at 368–69 (failure to name necessary parties was inexcusable neglect where applicants were at all times aware of them). Even absent a controlling statute or ordinance, a writ must be filed within a reasonable period. *Cathcart–Maltby–Clearview Comm'ty Coun. v. Snohomish Cy.*, 96 Wn.2d 201, 206,

634 P.2d 853 (1981). The same factors indicating that the respondents consciously decided not to challenge resolution 8736 indicate that the motion to amend was not filed within a reasonable time. The trial court erred by granting the motion to amend.

The Neighborhood also contends that the court erred in concluding that the Zoning Map Resolution 8737 was null and void based on the absence of a substantial change of circumstances. It argues that resolution 8737 had area wide impact and was therefore legislative action subject to very limited judicial review. *See Leonard v. Bothell,* 87 Wn.2d 847, 850, 557 P.2d 1306 (1976).

■■ Generally, when a local legislative body amends a zoning code or reclassifies land thereunder, it acts in an adjudicatory, quasi–judicial capacity. *Barrie v. Kitsap Cy.,* 93 Wn.2d 843, 852, 613 P.2d 1148 (1980); *Parkridge v. Seattle,* 89 Wn.2d 454, 460, 573 P.2d 359 (1978). The County's action in amending the zoning code was clearly adjudicatory for several reasons. First, the parties whose interests were affected were readily identifiable and the decision had a far greater impact on them than on the public. Second, the decision had localized applicability. While the amendment to the Comprehensive Plan affected over 10,000 acres, the rezone affected only 1,200 acres, a small portion of which belonged to the respondents and was down zoned. *See Barrie v. Kitsap Cy., supra* at 852; *Fleming v. Tacoma,* 81 Wn.2d 292, 299, 502 P.2d 327 (1972). Third, the rezone process was initiated by a citizen petition. When specific parties request a classification change for a specific tract, the County's action constitutes rezoning. *Cathcart,* at 212.

■ There is no presumption of validity favoring a re-zone, and the proponents of the rezone have the burden of proving that conditions have substantially changed since the original zoning or the most recent amendment. *Parkridge v. Seattle, supra* at 462. However, even an agency's adjudicatory action is granted some deference. *Save A Neighborhood Env't v. Seattle,* 101 Wn.2d 280, 285, 676

P.2d 1006 (1984) (*SANE v. Seattle*). When faced with a rezone challenge, the primary inquiry is "whether the zoning action bears a substantial relationship to the general welfare of the affected community." *SANE v. Seattle,* at 286; *Save Our Rural Env't v. Snohomish Cy.,* 99 Wn.2d 363, 368, 662 P.2d 816 (1983). This relationship must be carefully scrutinized whether the action involves up zoning or down zoning. *SANE v. Seattle,* at 286 n.1. Current community views may be given substantial weight, but they cannot be controlling, absent compelling reasons requiring the rezone for the public's welfare. *Parkridge v. Seattle, supra* at 462.

The trial court concluded that the rezone constituted a "site specific rezone" and the record "fail[ed] to disclose that conditions had substantially changed since the most recent zoning enactment." Where the site specific rezone (spot zone) grants a discriminatory benefit to one group to the detriment of its neighbors or the community at large without adequate public advantage or justification, the County's rezone should be overturned. *SANE v. Seattle,* at 286.

Of the 10 areas rezoned, 5 were down zoned from residential reserve to rural. The other 5 were up zoned. These changes are consistent with the surrounding land and the Comprehensive Plan as amended. On the other hand, Woodcrest and the Land Co. are discriminatorily affected to the extent that their development would be limited to an extent not required by former zoning. The Board's findings reflect a significant reliance upon community attitude. Relocation of the proposed nuclear power plant is cited as evidence that the need for residential development is markedly reduced. The findings also cite testimony from the health department, sheriff, and other state and county agencies. The concerns of these agencies, which pertain to public services, sewage disposal, and drainage and flooding, are legitimate concerns and bear a substantial relationship to public welfare. However, the trial court found that the same concerns existed at the time of the last rezone in

March 1980, a few short months before the present rezone proceedings were initiated. Although other development seems to be the basis for many of these concerns, the Board's findings did not specifically refer to this matter. In fact, finding of fact 18 cites the *lack* of specific development as evidence that the area is not suitable for development.

The Neighborhood also contends that amendment of a comprehensive plan constitutes evidence of substantially changed circumstances to support the rezone. The Neighborhood cites no authority for this proposition and we have found no Washington case that has specifically addressed it. It is clear, however, that separate proceedings are not required. *Chrobuck v. Snohomish Cy.*, 78 Wn.2d 858, 864, 480 P.2d 489 (1971). A hard and fast rule that comprehensive plan amendments can never be grounds for rezoning could prevent counties from effectively responding to unanticipated events or problems, and it could discourage long–range, overall planning and increase site specific zoning. On the other hand, there is legitimate concern that a county could avoid meeting the higher standard applicable to rezones by amending their comprehensive plan. This concern is equally applicable to an up zone or a down zone.

The evidence supports the trial court's conclusions that:

8. The rezone of Petitioners' property constitutes a site specific rezone and was a quasi–judicial action by the Skagit County Board of Commissioners.
9. The record fails to disclose that conditions have substantially changed since the most recent zoning enactment.

Although the amendment to the Comprehensive Plan was not effectively challenged in these proceedings, counsel for the County conceded during oral argument that because a comprehensive plan is only a "blueprint" and carries no regulatory effect, for the purpose of platting and developing the property, the zoning in effect since March 1980 would control. Woodcrest and the Land Co. are not prejudiced by resolution 8736.

The order declaring the Zoning Map Resolution 8737 to

be null and void is affirmed. The portion of the order relating to the Comprehensive Plan Resolution 8736 is reversed.

WILLIAMS and COLEMAN, JJ., concur.

Reconsideration denied April 2, 1985.