[No. 56772-7. En Banc. October 4, 1990.]

PUBLIC UTILITY DISTRICT NO. 1 OF KLICKITAT COUNTY, ET AL, *Respondents,* v. WALBROOK INSURANCE COMPANY LTD., ET AL, *Petitioners.*

*Burgess, Kennedy & Fitzer, P.S.,* by *Timothy R. Gosselin,* for petitioners.

*Gordon, Thomas, Honeywell, Malanca, Peterson & Daheim,* by *Albert R. Malanca, Kenneth G. Kieffer,* and *Donald S. Cohen; Waitt, Johnson & Martens,* by *Barry M. Johnson* and *Pamela M. Andrews;* and *Blair, Schaefer, Hutchison, Wynne, Potter & Horton,* by *David C. Hutchison,* for respondents.

GUY, J.—Petitioners filed an affidavit of prejudice pursuant to RCW 4.12.040, .050. The trial court refused to honor the affidavit, finding it patently untimely. Petitioners subsequently moved for discretionary review in the Court of Appeals. This court accepted certification and reverses the trial court.

## FACTS

This case arises out of the complex Washington Public Power Supply System's (WPPSS) $2.25 billion bond default. On March 27, 1989, respondents Public Utility District 1 of Klickitat County, et al. (PUD), filed a complaint for declaratory judgment against Underwriters at Lloyd's London (Lloyd's) and International Insurance, et al. (International), to establish insurance coverage for liability arising from the WPPSS bond default.

Through correspondence dated April 19, 1989, PUD learned that Lloyd's was not the correct subscriber to the insurance certificate on which PUD was attempting to establish coverage. Through further correspondence, the proper underwriter, H.S. Weavers Agencies (Weavers), agreed to a substitution of petitioners Walbrook Insurance Company Ltd., et al. (Walbrook), for Lloyd's as defendants to the pending declaratory judgment action. Walbrook also indicated it was attempting to appoint local counsel to appear on its behalf.

Subsequently, local counsel for Walbrook contacted PUD to arrange for the substitution of defendants. Walbrook also requested an extension of time in order to familiarize itself with the case.

On October 13, 1989, Walbrook provided PUD with copies of a proposed stipulation and order which would accomplish the substitution. It specifically provided that the substitution would take effect upon entry by the court.

In the interim, PUD moved for summary judgment against Lloyd's and International seeking to establish the validity of assignments made to PUD under insurance policies issued by Lloyd's and International.

Walbrook attended this hearing apparently in an effort to familiarize itself with the case and to "get up to speed" on the pending declaratory action; however, it did not participate in the hearing. At this time, the order of substitution had not yet been formally executed. Consequently, Walbrook informed PUD that, absent proper joinder, it would not consider itself bound by the court's decision.

Six days after an oral ruling was rendered in favor of PUD, Walbrook presented the stipulation and order of substitution for the court's signature. There was no formal agreement as to when the stipulation was to be signed by the court.

Subsequently, on November 3, 1989, Walbrook filed a motion and affidavit of prejudice seeking to remove the judge who had presided over the motion for summary judgment. The judge refused, finding the affidavit patently untimely and the claim of prejudice frivolous.

Walbrook moved for discretionary review at the Court of Appeals. This court accepted certification and reverses the trial court.

### ANALYSIS

### I

PUD argues that despite Walbrook's filing of an affidavit of prejudice in literal compliance with the requirements of RCW 4.12.050, extraordinary circumstances exist that render upholding the motion and affidavit of prejudice a strained or absurd result under this court's holding in *Marine Power & Equip. Co. v. Department of Transp.*, 102 Wn.2d 457, 687 P.2d 202 (1984).

We disagree. RCW 4.12.050 sets forth the requirements for filing an affidavit of prejudice timely and provides in pertinent part:

> Any *party* to or any attorney appearing in any action or proceeding in a superior court, may establish such prejudice by motion, supported by affidavit that the judge before whom the action is pending is prejudiced against such party or attorney, so that such party or attorney cannot, or believes that he cannot, have a fair and impartial trial before such judge: *Provided,*

That such motion and affidavit is filed and called to the attention of the judge *before he shall have made any ruling whatsoever* in the case, either on the motion of the party making the affidavit, or on the motion of any other party to the action . . .

(Italics ours.)

■ The statute expressly requires that one must be a party to the action in question and that the affidavit of prejudice must be filed before any discretionary ruling has been rendered. Once these prerequisites are satisfied, the statute is intended to take all discretion in determining prejudice away from the judge: "The statute permits of no ulterior inquiry; it is enough to make timely the affidavit and motion". *Marine Power,* at 461 (quoting *State ex rel. Talens v. Holden,* 96 Wash. 35, 40, 164 P. 595 (1917)). "[O]nce a party timely complies with the terms of RCW 4.12.050, prejudice is deemed established. Thereafter, 'the judge to whom [the motion] is directed is divested of authority to proceed further into the merits of the action.'" *Marine Power,* at 460 (quoting *State v. Dixon,* 74 Wn.2d 700, 702, 446 P.2d 329 (1968)). It is undisputed that Walbrook complied with the statute's requirements.

The statute, however, is not absolute. Statutes are to be interpreted as they are plainly written, "unless a literal reading would contravene legislative intent by leading to a strained or absurd result." *Marine Power,* at 461 (citing *State v. Keller,* 98 Wn.2d 725, 657 P.2d 1384 (1983)).

Like the present case, the issues in *Marine Power* were varied and complex. In 1978, the Washington State Department of Transportation (DOT) contracted with Marine Power and Equipment Company for the construction of six ferries at a total price of $105,862,300. Marine Power obtained a contract bond from Industrial Indemnity Company in the amount of $26,465,575. In November 1981, Marine Power filed suit against DOT. Damages ranged between $20 to $30 million and discovery was anticipated to be extensive and last several years. A special discovery master was appointed. The parties stipulated that Judge

Carol A. Fuller was to preside over the pretrial matters and trial. *Marine Power,* at 458.

Approximately 2 years later, DOT joined a California corporation. Within 35 days of its joinder, the California corporation filed a motion and affidavit of prejudice. Judge Fuller denied the motion as untimely for the following reasons:

> 1. The great difficulty involved in freeing an alternate judge's schedule to accommodate a year–long trial;
> 2. The expertise Judge Fuller had acquired during her 2 years' involvement with the case;
> 3. [The California corporation's] failure to file its motion and affidavit immediately upon being joined to the suit; and
> 4. The unique nature and complexity of the case.

*Marine Power,* at 459.

In upholding the affidavit's timeliness, this court reasoned that the circumstances presented were not so extraordinary that a literal application of the statute would constitute a strained or absurd result. *Marine Power,* at 465. Specifically, we held a particular judge's expertise was insufficient to warrant denying the motion and affidavit. *Marine Power,* at 465 (citing *State ex rel. Mauerman v. Superior Court,* 44 Wn.2d 828, 271 P.2d 435 (1954)). Further, we found a 35–day delay in filing was not unreasonable given the complexity of the case. *Marine Power,* at 465. Finally, we noted that where obtaining an alternate judge was insurmountable, the need to facilitate the orderly administration of justice might constitute an extraordinary circumstance warranting finding an affidavit of prejudice untimely. *Marine Power,* at 465 (citing *State v. Funk,* 170 Wash. 560, 17 P.2d 11 (1932)).

While acknowledging the propriety of these factors, PUD maintains there are additional circumstances not contemplated by this court in *Marine Power* that would render upholding the timeliness of Walbrook's affidavit a strained or absurd result.

Specifically, PUD argues that Walbrook was provided with adequate notice of the summary judgment hearing,

observed the proceeding from counsel's table, and had the benefit of hearing the court's oral ruling. Further, PUD asserts the stipulation and order of substitution was fully approved and executed by all parties prior to the hearing; however, Walbrook intentionally delayed its presentation until after the court rendered its ruling. Finally, PUD maintains Walbrook intentionally delayed filing the affidavit of prejudice for 6 days rather than presenting it immediately after the ruling.

*Webster's* defines "*extraordinary*" as "something exceeding the usual order". *Webster's New Twentieth Century Dictionary* 651 (2d ed. 1979). "*Absurd*" is defined as that which is "ridiculously inconsistent with reason". *Webster's,* at 8. "*Strained*" is defined as that which is "distorted". *Webster's,* at 1798. Our holding in *Marine Power* was thus intended to preclude the literal application of a statute where such unusual circumstances existed that doing so would be ridiculously inconsistent with or distort the purpose of the statute.

When applied to those reasons advanced by PUD, we disagree that they meet the test of *Marine Power.* Initially, we fail to recognize the significance of Walbrook's presence at the motion for summary judgment and the subsequent benefit of observing the court's ruling. We note that the proceeding was public; therefore, regardless of Walbrook's personal attendance, it was entitled to know the outcome. Further, PUD was aware approximately 5 months before the hearing that Walbrook, rather than Lloyd's, was the proper party to the litigation. Therefore, PUD had sufficient time to join Walbrook through means other than the stipulation and order of substitution or, at the least, move for an order of continuance until Walbrook was properly joined.

PUD argues that Walbrook's presence at counsel table and its failure to identify itself to the court constituted a deliberate attempt to deceive the court. We find no evidence that indicates Walbrook was a properly joined party

to the motion for summary judgment. Therefore, as a non-party Walbrook was under no discernable obligation to identify itself. Moreover, there is no evidence that Walbrook's failure to identify itself was deliberate.

PUD argues that the order of substitution was fully approved and executed by all parties prior to the hearing; however, Walbrook intentionally delayed presenting the order until after the court's oral ruling was rendered. There was no formal agreement governing when the order of substitution was to be signed by the court. Thus, if Walbrook's delay was intentional, which was probably so, it was not obligated otherwise. Once again we note that PUD could have moved for a continuance until the order of substitution was formally executed. Therefore, we find that if in fact the delay was intentional, PUD could have protected the record.

■ PUD argues Walbrook's 6–day delay in filing the affidavit constitutes an extraordinary circumstance. In *Marine Power,* we found a 35–day delay in filing reasonable, stating: "It would be unrealistic . . . to presume that [a party] would understand the desirability of filing a motion for change of judge immediately upon being joined in the action." *Marine Power,* at 465. We find the issues in this case are no less complex than those in *Marine Power.* Consequently, we find the 6–day delay to be reasonable.

PUD attempts to distinguish *Marine Power* by alleging that, unlike Walbrook, the moving party in *Marine Power* filed its affidavit prior to trial, thereby apprising the court of its status and intentions. PUD's argument ignores a crucial factor. Walbrook was not a properly joined party to the motion for summary judgment. Consequently, it had no standing to file the affidavit of prejudice, nor did it have any legal obligation to inform the court of its status or intentions. Therefore, contrary to PUD's position, this case appears to parallel *Marine Power* in that Walbrook timely filed its affidavit prior to any discretionary rulings in the only proceeding to which it was properly joined.

Alternatively, PUD suggests that from Walbrook's conduct it acted as a party to the summary judgment proceeding and now should be equitably estopped from denying that status.

We disagree. We have found no authority that supports the joinder of parties through equity. Assuming arguendo it is possible, equitable estoppel requires a showing that the party to be estopped (1) made an admission, statement or act which was inconsistent with his later claim; (2) that the other party relied thereon; and (3) that the other party would suffer injury if the party to be estopped were allowed to contradict or repudiate his earlier admission, statement or act. *Wendle v. Farrow,* 102 Wn.2d 380, 382, 686 P.2d 480 (1984). PUD fails to satisfy these prerequisites. In particular, prior to the hearing Walbrook informed PUD it did not consider itself a party and, thus, felt it would not be bound by the court's ruling.

Additionally, we note that in upholding the affidavit, PUD would suffer no ascertainable injury. Our holding does not preclude PUD from bringing a motion for summary judgment against Walbrook to determine the validity of insurance assignments. Conversely, finding the affidavit untimely would result in substantial prejudice to Walbrook. It would be bound to a decision where it did not have an effective opportunity to participate. At the least, this would not comport with the minimal requirements of due process. *Wilson v. Board of Governors, Wash. State Bar Ass'n,* 90 Wn.2d 649, 656, 585 P.2d 136 (1978), *cert. denied,* 440 U.S. 960 (1979). Therefore, we hold Walbrook's affidavit of prejudice was timely, and thus we reverse the trial court.

## II

PUD argues that under the relation–back provision of CR 15(c), the order of substitution relates back to the original date of filing. As a result, Walbrook would be considered a party from March 27, 1989, the filing date of the declaratory complaint and, therefore, subject to the court's discretionary ruling on the motion for summary judgment

rendered October 27, 1989. Thus, its affidavit of prejudice would be precluded as untimely. We disagree that the rule may be applied in this fashion.

CR 15(c) provides in pertinent part:

> Whenever the claim . . . asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth . . . in the original pleading, the amendment relates back to the date of the original pleading. *An amendment changing the party against whom a claim is asserted relates back if . . . the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.*

(Italics ours.)

PUD argues that the rule's requirements have been met. It maintains Walbrook had sufficient notice of all developments in this litigation prior to the execution of the order of substitution, and thus Walbrook would in no way be prejudiced in having to maintain a defense on the merits. PUD claims that through the correspondence that ensued prior to the actual substitution, Walbrook was fully aware that but for a mistake as to the correct policy insurer, the action would have been brought against it in the first instance.

There is no evidence contained in the record to support a conclusion that Walbrook was aware of its potential involvement in this litigation prior to PUD's discovery of its mistake as to the proper insurer's identity.

■■ Even assuming Walbrook was aware, PUD's argument disregards two crucial aspects of CR 15(c). First, in allowing the relation back, the rule presupposes there has been no actual litigation. To interpret the rule otherwise could potentially bind parties to decisions in which they had no opportunity to participate. This would be inconsistent with the second component of the rule, which requires that newly joined parties not be prejudiced in maintaining a defense on the merits. *Kiehn v. Nelsen's Tire Co.*, 45 Wn. App. 291, 296, 724 P.2d 434 (1986), *review denied*, 107

Wn.2d 1021 (1987). Further, application of the rule in the manner advocated by PUD would not comport with the minimal prerequisites of due process, which require an opportunity to be heard at a meaningful time and in a meaningful manner. *Wilson,* at 656.

We note that CR 15(c) has been used primarily to avoid the effects of the statute of limitations. *See North St. Ass'n v. Olympia,* 96 Wn.2d 359, 368, 635 P.2d 721 (1981). Because PUD fails to satisfy the prerequisites of invoking the relation–back provision of the rule, we need not determine whether CR 15(c) could be utilized in situations other than those involving the statute of limitations. However, we note there is a strong public policy implicated in preventing individuals from eluding their substantive obligations by simply invoking the statute of limitations, which supports the application of CR 15(c). PUD advances no comparable public policy that would warrant utilizing CR 15(c) in the manner it advocates.

█ Finally, joinder under CR 15(c) will not be permitted where the plaintiff's delay is due to inexcusable neglect, a conscious decision, strategy or tactic. *North Street,* at 368; *Woodcrest Invs. Corp. v. Skagit Cy.,* 39 Wn. App. 622, 626, 694 P.2d 705 (1985). PUD was aware that Walbrook, rather than Lloyd's, was the proper party in its action approximately 5 months prior to the summary judgment proceeding. Rather than moving to join Walbrook as a necessary party, PUD chose to accomplish the substitution of parties by stipulation which required entry by the court before joinder was accomplished. We find this course of action to constitute a conscious choice by PUD within the meaning of *North Street* and *Woodcrest.* As such, we decline to invoke the relation–back provision of CR 15(c).

## CONCLUSION

The history of RCW 4.12.050 reflects an accommodation between two important, and at times competing, interests: a party's right to one change of judge without inquiry and the orderly administration of justice. This history also

reflects a decision to accord greater weight to the party's right to a change of judge. *Marine Power,* at 463. Literal compliance with the statute's prerequisites removes any discretion by the judge as to its application, with limited exceptions contained in the statute and in *Marine Power.* In this regard, we find PUD fails to advance circumstances that would meet the test in *Marine Power.* Therefore, we hold Walbrook's affidavit of prejudice was timely and reverse the order of the trial court.

CALLOW, C.J., and UTTER, BRACHTENBACH, DOLLIVER, DORE, ANDERSEN, DURHAM, and SMITH, JJ., concur.