[No. 71240-9.   En Banc.]
Argued February 14, 2002.      Decided April 4, 2002.

JAMES A. STANSFIELD, *Respondent*, v. DOUGLAS COUNTY, *Petitioner*.

*Stanley A. Bastian* (of *Jeffers, Danielson, Sonn & Aylward, P.S.*), for petitioner.

*Robert F. Hedrick* (of *The Hedrick Law Firm*), for respondent.

OWENS, J. — James A. Stansfield, M.D., is suing Douglas County for prosecuting him for the murder of his wife, Pat Stansfield, and one of their neighbors, Fred Smith. At issue is the timeliness of three claims first raised in Dr.

Stansfield's amended complaint after the statute of limitations had run. The superior court dismissed the claims on summary judgment, ruling that because Dr. Stansfield inexcusably neglected to allege the claims within the limitations period, they did not relate back under CR 15(c). The Court of Appeals reversed, holding that inexcusable neglect does not bar relation back of amendments merely adding new claims. This decision created a split of authority. We therefore granted Douglas County's petition for review. We affirm the Court of Appeals, and remand the case to the superior court for further proceedings.

## FACTS

The facts of this case are very complicated. They are admirably told in two Court of Appeals opinions already written in this case: *Stansfield v. Douglas County*, 107 Wn. App. 1, 5-9, 27 P.3d 205, *review denied*, 145 Wn.2d 1009 (2001) [hereinafter *Stansfield* I]; and *Stansfield v. Douglas County*, 107 Wn. App. 20, 23-28, 26 P.3d 935 (2001) [hereinafter *Stansfield* II], the decision we are reviewing. A summary will suffice for our purposes.

Pat Stansfield died during the night of August 19-20, 1990. Dr. Stansfield discovered her in bed, sitting up but slouched over. The coroner determined that Mrs. Stansfield died of postural asphyxiation in a vomiting episode, or natural causes. The standard toxicology report showed Valium at therapeutic levels and a blood alcohol level of 0.34. Four months later, on the morning of December 14, 1990, Fred Smith's body was found at the scene of a car accident. Mr. Smith and his wife, Sue, were neighbors of the Stansfields for many years. Detective Sergeant Richard Adams of the Douglas County Sheriff's Office investigated the death. Mr. Smith's car was driven off an embankment to make it appear he had gone off the road. The coroner concluded the cause of death was blunt trauma to the head, and estimated the time of death around 10 P.M. the night before. Mr. Smith's blood alcohol level was 0.08.

After the suspicious death of Mr. Smith, two rumors spread through the area. First, that Dr. Stansfield was having an affair with Sue Smith, and, second, that Dr. Stansfield killed his own wife and Mr. Smith. "Fama, malum qua non aliud velocius ullum."[1] Several witnesses came forward incriminating Dr. Stansfield. Dave Manning, a pharmacist in nearby Quincy, told Sergeant Adams that a few months before Mrs. Stansfield's death Dr. Stansfield made an unusual purchase of liquid Haldol, claiming that it was for behavior modification in his grandchildren.

Sergeant Adams learned that Haldol is a colorless, odorless, tasteless liquid that would be very difficult to detect when added to something else. In combination with Valium and alcohol it could cause "stupor, unconsciousness, extrapyramidal symptoms and death." Clerk's Papers (CP) at 251. Initial tests performed by Barry Logan, Ph.D., at the Washington State Toxicology Laboratory (WSTL) showed the presence of Haldol in both Mrs. Stansfield and Mr. Smith. The coroner amended Mrs. Stansfield's death certificate to homicide, and on March 30, 1993, Douglas County charged Dr. Stansfield with two counts of murder.

At trial, defense counsel attacked Sergeant Adams' investigation and the scientific evidence. The evidence showed that Mrs. Stansfield sometimes took Haldol, and that Dr. Stansfield also told the pharmacist it was for her. It also showed that Mr. Smith was taking Cardizem, a heart medication that could easily be confused with Haldol in WSTL's tests. WSTL did the tests again, accounting for Cardizem, and again found Haldol, but these were excluded from trial because they were done so late. The only WSTL toxicologist available to testify believed the original tests did not adequately control for Cardizem. To make matters worse, Sergeant Adams testified that he still had a sample of Mr. Smith's blood in his patrol car, even though WSTL had long maintained that none was left. On October 11,

---

[1] "Rumor, the swiftest evil," VERGIL, AENEID, 4.174, spreading the news of Dido and Aeneas.

1993, the prosecutor moved to dismiss the charges, believing the burden of proof could not be sustained.

Dr. Stansfield then sued the State, Douglas County, and others. He filed a complaint in state court on October 3, 1995. Douglas County did not file an answer. In the meantime the parties litigated in federal court until that action was dismissed on October 8, 1996. Then, on February 4, 1999, Dr. Stansfield sought leave to amend his state court complaint, which was granted. Four days later Douglas County answered. The amended complaint was filed on February 26, 1999. Douglas County and the State sought summary judgment. The state's motion was granted, and the Court of Appeals affirmed. *Stansfield I*, 107 Wn. App. 1. Douglas County is the only defendant left.

Douglas County argued the amended complaint did not relate back to the time of the original complaint. The original complaint stated claims for negligence and outrage. The amended complaint was identical, except it added claims for false arrest, malicious prosecution, infliction of emotional distress, and defamation. It is undisputed that the new claims are timely if they relate back, but time-barred if they do not. *See* RCW 4.16.080(2) (three year limitation on general tort claims); RCW 4.16.100(1) (two year limitation on libel, slander, and false imprisonment). The superior court dismissed the claim for defamation on the evidence. The Court of Appeals affirmed. *Stansfield* II, 107 Wn. App. at 35. The superior court dismissed the claims for false arrest, malicious prosecution, and infliction of emotional distress on the ground that they did not relate back. The Court of Appeals reversed on the relation back issue.

The superior court ruled that the requirements of CR 15(c) for relation back were met, stating that the rule would "ordinarily apply." CP at 633. The court also found that Douglas County was not prejudiced by the delay. However, the superior court ruled that the first amended complaint did not relate back because Dr. Stansfield inexplicably waited two and a half years to amend after dismissal in

federal court. The court relied on *Woodcrest Investments Corp. v. Skagit County*, 39 Wn. App. 622, 694 P.2d 705 (1985), a Division One case holding that inexcusable neglect, or a conscious decision, strategy or tactic, prevents relation back under CR 15(c). Division Three refused to apply *Woodcrest*, stating that the inexcusable neglect rule applies only to amendments adding new parties, but not to amendments adding new claims. *Stansfield* II, 107 Wn. App. at 32. We granted review to resolve the conflict.

## ISSUE

Does inexcusable neglect prevent relation back under CR 15(c) of an amended complaint that adds new claims, but not new parties?

## ANALYSIS

■ This case is governed by CR 15(c). Whether an amended pleading relates back under CR 15(c) is a separate question from whether the amendment should be allowed under CR 15(a). In this case, Dr. Stansfield was entitled to amend as a matter of course, because Douglas County had not served a responsive pleading when he sought leave to amend. CR 15(c) provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

The rule clearly distinguishes between amendments adding claims and amendments adding parties. The court noted the distinction in *Haberman v. Washington Public Power Supply System*, 109 Wn.2d 107, 173-74, 744 P.2d 1032, 750 P.2d 254 (1987), contrasting *Caruso v. Local Union No. 690 of International Brotherhood of Teamsters*, 100 Wn.2d 343, 351, 670 P.2d 240 (1983), a case involving new claims, with *North Street Ass'n v. City of Olympia*, 96 Wn.2d 359, 368, 635 P.2d 721 (1981), *overruled on other grounds by Sidis v. Brodie/Dohrmann, Inc.*, 117 Wn.2d 325, 815 P.2d 781 (1991), a case involving new parties.

New parties can be added under the second sentence of CR 15(c) after the statute of limitations has run. This is because "once the notice and prejudice requirements of the rule have been met, any amendment does not subvert the policies of the statute of limitations." *North Street*, 96 Wn.2d at 368. However, joinder is not allowed under CR 15(c) "if the plaintiff's delay is due to inexcusable neglect." *Id.* "[I]nexcusable neglect exists when no reason for the initial failure to name the party appears in the record." *S. Hollywood Hills Citizens Ass'n v. King County*, 101 Wn.2d 68, 78, 677 P.2d 114 (1984). Under the same rubric, "a conscious decision, strategy or tactic" prevents relation back of an amendment adding a party. *Pub. Util. Dist. No. 1 v. Walbrook Ins. Co.*, 115 Wn.2d 339, 349, 797 P.2d 504 (1990). The inexcusable neglect rule must be satisfied in addition to the requirements of the second sentence of CR 15(c). *S. Hollywood Hills*, 101 Wn.2d at 77-78; *Tellinghuisen v. King County Council*, 103 Wn.2d 221, 223-24, 691 P.2d 575 (1984) (per curiam).

The inexcusable neglect rule does not apply to amendments adding claims. In *Caruso*, 100 Wn.2d at 351, the court held that an amendment adding a new claim related back, though it was filed five years and four months after the original, and less than a month before trial. There was no reason for the delay. The court said:

> [O]nce litigation involving particular conduct has been instituted, the parties are not entitled to the protection of the

statute of limitations against the later assertion by amendment of claims that arise out of the same conduct as set forth in the original pleading.

*Id.* (citing 6 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE § 1488 (1971)). This accords with the purpose of notice pleading, to " 'facilitate a proper decision on the merits.' " *Caruso,* 100 Wn.2d at 349 (quoting *Conley v. Gibson,* 355 U.S. 41, 48, 78 S. Ct. 99, 2 L. Ed. 2d 80 (1957)). "[A] party is permitted to recover whenever she has a valid claim, even though her attorney fails to perceive the proper basis of the claim at the pleading stage." JACK H. FRIEDENTHAL, MARY KAY KANE, & ARTHUR R. MILLER, CIVIL PROCEDURE 259 (3d ed. 1999).

In *Woodcrest* the plaintiffs challenged Skagit County's Zoning Map Resolution in superior court, and challenged the county's Comprehensive (Zoning) Plan Resolution by amendment. The superior court allowed relation back, finding that both resolutions "arose out of the same proceeding." 39 Wn. App. at 625. Division One reversed, citing inexcusable neglect. *Id.* at 626-27. To the extent *Woodcrest* applied the inexcusable neglect rule to an amendment adding a claim, it is inconsistent with *Caruso,* and Division Three correctly declined to follow it.

## CONCLUSION

An amended pleading adding new claims relates back if it meets the requirements of the first sentence of CR 15(c). An amended pleading adding new parties relates back if it meets the requirements of the second sentence of CR 15(c) and the delay in making the amendment is not due to inexcusable neglect or a conscious decision, strategy, or tactic. Because Dr. Stansfield's amended complaint only adds new claims, it is enough that it meets the requirements of the first sentence of CR 15(c). We affirm the Court of Appeals and remand to the superior court.

ALEXANDER, C.J., JOHNSON, MADSEN, SANDERS, IRELAND, BRIDGE, and CHAMBERS, JJ., and ELLINGTON, J. Pro Tem., concur.