[No. 49280-8. En Banc. September 29, 1983.]

ROBERT E. CARUSO, *Respondent,* v. LOCAL UNION NO. 690 OF INTERNATIONAL BROTHERHOOD OF TEAMSTERS, CHAUFFEURS, WAREHOUSEMEN AND HELPERS OF AMERICA, *Petitioner.*

*Hafer, Cassidy & Price, Hugh Hafer,* and *Robert E. Omberg,* for petitioner.

*Joseph J. Ganz,* for respondent.

DIMMICK, J.—Robert E. Caruso, respondent, brought suit against Local 690 and Joint Council 28 of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America for intentional interference with his business relations. He later amended his complaint to additionally allege damages under a defamation cause of action. Both claims arose from a "do not patronize" article published in a weekly teamsters union paper. Local 690, petitioner, appealed a judgment entered upon an unsegregated jury verdict awarding respondent damages.[1] The Court of Appeals affirmed in *Caruso v. Local 690, Int'l Bhd. of Teamsters*, 33 Wn. App. 201, 653 P.2d 638 (1982). We reverse and hold that the tortious interference with business cause of action must be dismissed. We agree that the trial court did not abuse its discretion in granting respondent leave to amend his complaint. Because the jury verdict was unsegregated, we remand this matter for a new trial solely on the defamation action.

Caruso was the sole proprietor of "Linoleum & Carpet City" in Spokane, Washington. He also owned a parking lot approximately a quarter of a mile from his business, where he rented spaces on a monthly basis to members of the general public. Periodically, delivery trucks blocked access to the lot.

On October 26, 1973, Caruso found a beer truck and another smaller van blocking the entrance to his parking lot. After unsuccessfully trying to locate the drivers, respondent, noticing the beer truck was unlocked and the keys were in the ignition, removed the keys, secured the truck, and returned to his place of business. He telephoned the owner, whose name and address were on the side of the truck, and told him to pick up the keys and remove the truck.

Caruso soon received a belligerent telephone call from Mr. Contos, the driver of the beer truck. Caruso then called a tow truck to have both vehicles removed and proceeded

---

[1]Joint Council No. 28 settled with Caruso and did not appeal the judgment.

back to the lot. Mr. Contos and the driver of the van were at the lot. The driver of the van settled his share of the tow truck costs with the tow truck driver, but the representative of the beer truck's owner and Contos refused to pay. Contos proceeded to curse Caruso and threaten him. He also told Caruso that he would report him to the teamsters union and the union would "break" him. The tow truck driver refused to tow the beer truck until the police arrived. Finally, at the direction of the police, the truck was towed into an adjacent alley.

On November 9, 1973, the following article was published in the Washington Teamster, a weekly paper mailed primarily to union members, active and retired. It was also distributed to several universities and libraries.

Don't [P]atronize Carpet City in Spokane

This is to notify all members of Teamsters Union, Local 690 and all other Teamsters and Laboring people in the State of Washington that when traveling to and from the Expo City—"please do not *patronize Carpet City Carpet & Linoleum Shop* at West 518 Main Avenue"—Spokane, Washington," [*sic*] (Expo City). The reasons for this request are: This Company is continuously harassing the Teamsters and other laboring people who may at some time use the parking facility at this place of business to make a delivery because of the congested traffic problems in Expo City since construction is going on mainly in that area. Someone from this Company removes the keys of such vehicles, have [*sic*] the equipment impounded and create [*sic*] many problems for these employees and their employers including the cost of impoundment of those effected. [*sic*]

This company will not cooperate with these drivers when told that they will move their equipment and apologize for parking in this area—their equipment is still impounded!

We request that all Laboring people—Teamsters or otherwise—*do not [p]atronize Carpet City Carpet & Linoleum Shop.*

Thanks kindly for your *Support.*

Teamsters Union, Local 690

This article was printed once on the front page of the

teamster paper, and twice more in substantially the same form on page 5. The article was again printed in a later edition distinguishing Caruso's business from a store with a similar name.

Soon after the publication of the first three articles, unidentified persons began calling Linoleum & Carpet City and stating that they would not shop at Carpet City. Some characterized the store as a "scab" outfit. Other callers referred to Caruso by various derogatory and profane terms. Sales dropped dramatically, for whatever reason, and in May 1974, he relocated his business hoping to minimize his losses.

On December 17, 1974, Caruso filed the present action seeking damages for business interference. His original attorney died and he thereafter hired another attorney. Trial was eventually set for April 28, 1980. In early April, Local 690 moved for summary judgment to dismiss respondent's claim for business interference. At that time Caruso moved to amend his complaint to allege damages under a defamation cause of action arising from the articles. The trial court denied the motion for summary judgment and granted the motion for leave to amend. Thereupon, at Local 690's request, the trial was continued until January 1981.

# I
## BUSINESS INTERFERENCE CLAIM

Petitioner's only contention before this court is that the publication of the articles is constitutionally protected and cannot give rise to liability for the tort of business interference under *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 73 L. Ed. 2d 1215, 102 S. Ct. 3409 (1982). We agree.

In *Claiborne,* merchants sued the NAACP and its members for economic losses sustained during a 7–year boycott of their businesses. During the boycott there were speeches, marches, picketing, threats, and several acts of violence. The United States Supreme Court held that the First and Fourteenth Amendments preclude imposition of liability

for tortious interference with business on boycott participants or the NAACP, even though some boycott participants were violent. The opportunity to persuade others to action is clearly protected. The *Claiborne* Court quoted *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 29 L. Ed. 2d 1, 91 S. Ct. 1575 (1971), where the Court held in a case involving the peaceful distribution of leaflets:

> Petitioners plainly intended to influence respondent's conduct by their activities; this is not fundamentally different from the function of a newspaper. Petitioners were engaged openly and vigorously in making the public aware of respondent's real estate practices. Those practices were offensive to them, as the views and practices of petitioners are no doubt offensive to others. But so long as the means are peaceful, the communication need not meet standards of acceptability.

*(Citations omitted.)*

■ The reasoning of the *Claiborne* Court is applicable here. Local 690, perceiving a grievance between one of its members and Caruso, asked its members and other "laboring people" to boycott his business. Though perhaps coercive, petitioner's activity was speech in its purest form and thus is entitled to at least the same degree of protection the NAACP's "speech plus conduct" activities were afforded against imposition of damages for business interference.

We have previously held that "damage to the business of persons subject to a primary boycott, lawfully conducted, is one of the inconveniences for which the law does not afford a remedy." *Wright v. Teamsters' Local 690,* 33 Wn.2d 905, 913, 207 P.2d 662 (1949). Although petitioner in the instant case was not boycotting in its usual realm (*i.e.,* organizing workers or informing the public of a dispute with an employer), its "do not patronize" message was protected. Protecting the speech here does not affect the statutory prohibition against secondary boycotts which has been upheld. *Claiborne,* 458 U.S. at 912.

Caruso's only response to the *Claiborne* analysis is that the information upon which the "do not patronize" request was based is false and thus not protected. His claim of fal-

sity, however, properly goes to the defamation cause of action.

## II
### AMENDMENT TO THE COMPLAINT

Local 690 alleges error because the trial court allowed Caruso to add a defamation claim 5 years 4 months after he had filed his original complaint.

■ Amendments to pleadings are governed by CR 15(a) which provides, in pertinent part, that "a party may amend his pleading only by leave of court . . . and leave shall be freely given when justice so requires." The purpose of pleadings is to "facilitate a proper decision on the merits", *Conley v. Gibson,* 355 U.S. 41, 48, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957), and not to erect formal and burdensome impediments to the litigation process. Rule 15 of the Federal Rules of Civil Procedure, from which CR 15 was taken, "was designed to facilitate the amendment of pleadings except where prejudice to the opposing party would result." *United States v. Hougham,* 364 U.S. 310, 316, 5 L. Ed. 2d 8, 81 S. Ct. 13 (1960). CR 15 was designed to facilitate the same ends.

Several factors are usually used as criteria by trial courts to determine the propriety of a motion for leave to amend. Petitioner asserts that one of those factors alone, undue delay in making the motion, requires that we reverse the trial court's decision to allow the amendment. We have held that undue delay on the part of the movant in proposing the amendment constitutes grounds to deny a motion to amend only "where such delay works undue hardship or prejudice upon the opposing party". *Appliance Buyers Credit Corp. v. Upton,* 65 Wn.2d 793, 800, 399 P.2d 587 (1965). This holding is in accord with the holding of many courts that delay, excusable or not, in and of itself is not sufficient reason to deny the motion. *See, e.g., Cornell & Co. v. Occupational Safety & Health Review Comm'n,* 573 F.2d 820, 823 (3d Cir. 1978); *Howey v. United States,* 481 F.2d 1187, 1191 (9th Cir. 1973); *Hanson v. Hunt Oil Co.,*

398 F.2d 578 (8th Cir. 1968); *United States v. IBM Corp.,* 66 F.R.D. 223 (S.D.N.Y. 1975); *Fli–Fab, Inc. v. United States,* 16 F.R.D. 553 (D.R.I. 1954). *See also* 6 C. Wright & A. Miller, *Federal Practice* § 1488 (1971). The touchstone for denial of an amendment is the prejudice such amendment would cause the nonmoving party. *See, e.g., Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330–31, 28 L. Ed. 2d 77, 91 S. Ct. 795 (1971); *Howey v. United States, supra; Cornell & Co. v. Occupational Safety & Health Review Comm'n, supra*; Wright & Miller, *supra.*

Although 5 years 4 months is a long period of time and as a practical matter the risk of prejudice increases with time, the delay alone in the instant case does not rise to the level of prejudice required. Other courts have allowed amendments to complaints made 5 or 6 years after the filing of the original complaint. *See, e.g., Howey v. United States, supra; United States v. IBM Corp., supra.*

The original complaint in the instant case contained a paragraph which asserted that the articles were false and "were published by [petitioner] with knowledge of their falsity or with reckless disregard for their truth or falsity"—a phrase commonly used in and associated with defamation actions. This paragraph was undoubtedly included in anticipation of petitioner's defense that the articles were privileged. As noted in *Calbom v. Knudtzon,* 65 Wn.2d 157, 396 P.2d 148 (1964), defamation is not an essential element of the tort of business interference but may be shown for the bearing it has upon a defense of privilege. Accordingly, petitioner had notice of a possible issue of defamation at the time of the original complaint.

In opposing the motion for leave to amend, petitioner's attorney filed an affidavit that petitioner would suffer undue prejudice because of the lack of prior knowledge of this claim so as to prepare the defense, contact witnesses and otherwise secure evidence. Petitioner did not set forth any specific objections other than it might be unable to contact some union officials. However, petitioner did not

relate this objection to any actual prejudice and never asserted that respondent's delay was occasioned by bad faith. The trial court continued the trial to alleviate the surprise and enable petitioner to prepare a defense and contact witnesses. From the record before us it does not appear that petitioner engaged in or even attempted any new discovery prior to the new trial date. Petitioner simply failed to present any evidence of actual prejudice to the trial court, or to us.

A trial court's action in passing on a motion for leave to amend will not be disturbed on appeal except for a manifest abuse of discretion or a failure to exercise discretion. *Appliance Buyers Credit Corp. v. Upton, supra; Foman v. Davis,* 371 U.S. 178, 9 L. Ed. 2d 222, 83 S. Ct. 227 (1962). We find no abuse.

Petitioner argues that in any event the amendment should not relate back to the date of the original complaint and thus the defamation action must be dismissed under the statute of limitations. In support of this argument petitioner relies solely on *Ennis v. Ring,* 49 Wn.2d 284, 300 P.2d 773 (1956), which held that an amendment will not relate back if it adds a new cause of action or changes the theory of the pleading. That case was decided prior to the adoption of the civil court rule governing relation back, CR 15(c).

CR 15(c), correctly relied on by the trial court, provides in part that an amendment relates back when the cause asserted in the amended pleading "arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading". This rule is based on the premise that once litigation involving particular conduct has been instituted, the parties are not entitled to the protection of the statute of limitations against the later assertion by amendment of claims that arise out of the same conduct as set forth in the original pleading. Wright & Miller, *supra.*

## III
## DEFAMATION CLAIM

Petitioner alleges several instructional errors which we briefly discuss as guidance for the trial court on remand. We address only those errors discussed in the petition for review. RAP 13.7.

█ Under our case law, in order to recover under a cause of action for defamation, plaintiff must establish four essential elements: (1) falsity; (2) an unprivileged communication; (3) fault; and (4) damages. *Mark v. Seattle Times*, 96 Wn.2d 473, 486, 635 P.2d 1081 (1981), *cert. denied*, 457 U.S. 1124 (1982). The necessary degree of fault depends on whether the plaintiff is a private individual or a public figure or public official. If the plaintiff is a private individual, a negligence standard of fault applies. *Taskett v. KING Broadcasting Co.*, 86 Wn.2d 439, 445, 546 P.2d 81 (1976); *Bender v. Seattle*, 99 Wn.2d 582, 664 P.2d 492 (1983). Otherwise, the plaintiff must prove "actual malice"—that is, knowledge of falsity or reckless disregard of the truth or falsity—to recover. *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 342, 41 L. Ed. 2d 789, 94 S. Ct. 2997 (1974); *New York Times Co. v. Sullivan*, 376 U.S. 254, 279–80, 11 L. Ed. 2d 686, 84 S. Ct. 710, 95 A.L.R.2d 1412 (1964).

Local 690 concedes that Caruso is a private citizen. It, however, asserts that the trial court erred in instructing the jury on the negligence standard, and contends that a higher standard of fault applies relying solely on *Time, Inc. v. Hill*, 385 U.S. 374, 388–89, 17 L. Ed. 2d 456, 87 S. Ct. 534 (1967). In that case the Court had before it the application of New York's right to privacy act. It held that the statute could not be constitutionally applied unless there was proof that defendant published a report with knowledge of its falsity or in reckless disregard of the truth. 385 U.S. at 387–88. Petitioner relies on certain language in that case that a "negligence test would place on the press [an] intolerable burden". 385 U.S. at 389. *Time, Inc.*, however, dealt with a cause of action for a violation to a person's right to privacy—an action separate and distinct from a defamation

action. The Court did not alter the standards of fault applicable in a defamation cause of action. Therefore, under our case law and that of the United States Supreme Court, when a private individual brings a defamation action the negligence standard of fault applies.

Petitioner next takes exception to the jury being instructed, in pertinent part, as follows:

> if you find that the published matter is false and defamatory, then you are instructed that it is libelous per se. If a matter is libelous per se the law presumes that plaintiff is damaged. It is the responsibility of the jury to determine the amount of such damage, if any.

Petitioner objects to the "libelous per se" language. The Court of Appeals held this instruction was proper. On the record before us, we disagree.

■ We have previously held that

> There are two meanings of the words "per se" when used in defamation actions. These words may signify either (1) that the article is libelous on its face or (2) that it is actionable without proof of special damage.

*Amsbury v. Cowles Pub'g Co.,* 76 Wn.2d 733, 737, 458 P.2d 882 (1969). *See also Wilson v. Sun Pub'g Co.,* 85 Wash. 503, 514, 148 P. 774 (1915). The latter meaning of libelous per se is at issue in this case.

A defamatory publication is libelous per se (actionable without proof of special damages) if it (1) exposes a living person to hatred, contempt, ridicule or obloquy, to deprive him of the benefit of public confidence or social intercourse, or (2) injures him in his business, trade, profession or office. *Amsbury v. Cowles Pub'g Co., supra; Grayson v. Curtis Pub'g Co.,* 72 Wn.2d 999, 436 P.2d 756 (1967); *Spangler v. Glover,* 50 Wn.2d 473, 313 P.2d 354 (1957); *Corbin v. Madison,* 12 Wn. App. 318, 529 P.2d 1145 (1974).

The imputation of a criminal offense involving moral turpitude has been held to be clearly libelous per se. *Ward v. Painters' Local 300,* 41 Wn.2d 859, 252 P.2d 253 (1953). The instant case is quite different. It deals with the rather vague areas of public confidence, injury to business, etc. In

such cases

> Where the definition of what is libelous *per se* goes far beyond the specifics of a charge of crime, or of unchastity in a woman, into the more nebulous area of what exposes a person to hatred, contempt, ridicule or obloquy, or deprives him of public confidence or social intercourse, the matter of what constitutes libel *per se* becomes, in many instances, a question of fact for the jury.

*Purvis v. Bremer's, Inc.*, 54 Wn.2d 743, 752, 344 P.2d 705 (1959). In all but extreme cases the jury should determine whether the article was libelous per se. *Miller v. Argus Pub'g Co.*, 79 Wn.2d 816, 820 n.3, 821 n.4, 490 P.2d 101 (1971); *Amsbury v. Cowles Pub'g Co., supra* at 740.

 We note that the challenged instruction contained an additional error. It allowed the jury to presume damages when liability was based on negligence, not actual malice. The instruction thus is contrary to *Gertz v. Robert Welch, Inc., supra.*[2]

In *Gertz* the Court held that so long as states do not impose liability without fault, they may define for themselves the appropriate standard of liability for a publisher of defamatory statements injurious to a private individual. As noted above and as applied in this case, our State has chosen a negligence standard. This State interest, however, extends no further than compensation for actual injury. The Court specifically held:

> the States may not permit recovery of presumed or punitive damages, at least when liability is not based on a showing of knowledge of falsity or reckless disregard for the truth.

418 U.S. at 349. The trial court did exactly what *Gertz* disapproved—it permitted the jury to presume damages when liability was not based on actual malice.

We dismiss Caruso's claim against Local 690 for business

---

[2]The Court of Appeals failed to address this issue on the grounds that petitioner did not properly object to the instruction at trial. The record discloses that not only did petitioner object to the instruction, but in so doing he cited the *Gertz* case to the trial court.

interference.

Since the jury verdict did not segregate the causes of action, we remand for trial solely on the defamation claim.

WILLIAMS, C.J., and ROSELLINI, STAFFORD, UTTER, BRACHTENBACH, DOLLIVER, DORE, and PEARSON, JJ., concur.

Reconsideration denied January 30, 1984.