# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

SIMON OROS and VIORICA OROS, )
husband and wife, )
           )
            Respondents, )
           )
           v. )
           )
PAULA G. ANDERSON and JOHN DOE )
ANDERSON, husband and wife, )
           )
            Appellants. )
           )

No. 72238-7-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: August 24, 2015

APPELWICK, J. — A jury awarded the Oroses damages against Anderson, in her personal capacity, for breach of contract. Anderson argues that the trial court erred when it excluded evidence relating to counterclaims by Anderson's corporation and when it denied her request to add the affirmative defense of offset. She further asserts that the trial court erred when it awarded the Oroses prejudgment interest and attorney fees in the amount requested by the Oroses. We affirm.

## FACTS

Paula Anderson is a licensed real estate agent. In 2009, Anderson worked for RE/Max Northwest Realtors and worked out of its office. Anderson worked primarily with foreclosed properties. She was also one of two shareholders for Anderson Real Estate Group (ARE)—a closely held corporation. Anderson's husband was ARE's other shareholder.

In May 2009, Simon Oros began working with Anderson, because he needed a real estate agent to help him to invest. Anderson encouraged Oros to invest in foreclosed properties, remodel those properties, and sell them for a profit.

On June 1, 2009, Oros signed a "Buyer's Agency Agreement" with RE/Max to purchase houses at foreclosure auctions. The agreement was between RE/Max as the broker and Oros as the buyer. It also stated that Re/Max appointed ARE as the agent to represent Oros.

Sometime during June 2009, Anderson gave Oros a document from ARE entitled "Buying Equity Property." The document outlined the foreclosure purchasing process: the timeline, the auction process, the down payment, and the financing options. It also stated in capital letters that there are no returns for auction properties. Oros signed the bottom of each page of the document.

To begin the investment process, a lender—in this case Equity Partners Northwest Funding LLC—would attend the foreclosure auction and bid on the desired property. After the lender purchased the property at the auction, the borrower—in this case Oros—would pay a down payment and execute loan documents through the lender to finance the remaining price of the property.

On July 9, 2009, Anderson called Oros about a foreclosed property investment opportunity in Renton. After speaking with Anderson, Oros orally agreed to buy the Renton property. After the auction, Anderson contacted Oros and told him that a bid was made on Oros's behalf and the property was his. The total purchase price of the property was $340,100.00. Anderson instructed Oros to pay a down payment of $85,025.00. Oros provided the $85,025.00 down payment as instructed later that day.

The next morning, Oros and his wife went to look at the property that had been purchased on his behalf at the foreclosure sale. After seeing the house, noticing that several other houses on the block were also for sale, and speaking with a real estate

agent who was selling one of the other houses on the block, Oros determined that the house he agreed to purchase was worth less than Anderson suggested. Oros called Anderson and told her that he no longer wanted to purchase the Renton property.

The following Monday, Dean Street, the representative for Equity Partners Northwest, the lender, found out that Oros no longer wanted to purchase the property. Street was angry and told Anderson that because Oros was her client she was required to fix the problem. Over the course of several conversations, Street told Anderson that if she did not fix the problem with Oros that she would never work in the foreclosure industry again. Anderson felt that Street "was really threatening" her.

Subsequently, Anderson agreed to buy the Renton property, remodel it, and resell it herself. Anderson was already remodeling another house that summer and told Oros that she would need his help with the project.

On August 3, 2009, the Oroses, Anderson, and Equity Partners Northwest entered into a property agreement (Agreement). Under the Agreement, Anderson took title to the Renton property and became the buyer, the Oroses were the sellers, and Equity Partners Northwest remained the lender. The Agreement provides in pertinent part:

> (b) Buyer shall execute a junior position deed of trust behind Lender in the amount of $85,025.00 in favor of Seller. In the event that Buyer is able to sell the Property for a purchase price in the amount of $450,000 or more, Seller shall receive $2000.00 in addition to the return of their principal. In the event the Buyer sells the Property for a purchase price of less than $450,000 Seller shall have $2000.00 deducted from the principal amount. No interest shall accrue on the unpaid balance and the principal shall be due 180 days from the date of this Agreement. Seller's deed of trust shall be paid from the proceeds of the closing of the sale of the Property. Buyer agrees to use best efforts to list, market and sell the Property.

In other words, Anderson would purchase the Renton property utilizing the Oroses' $85,025.00 down payment and would reimburse them after the sale of the property. The

3

Agreement also stipulated that a new deed of trust would be issued as between Anderson and Equity Partners Northwest. That deed of trust was executed and recorded. There was no evidence in the record before us of a junior position deed of trust in favor of the Oroses. According to the Oroses, the deed of trust securing repayment of their down payment was never executed.

Anderson worked to repair and upgrade the Renton property in order to successfully improve it and sell it for more money. According to Anderson, Oros orally agreed to help with the repairs, failed to do so, and did not contribute to any of the costs. Anderson sold the Renton property in December 2009 for $414,800.00—less than the $450,000 benchmark outlined in the Agreement. From the $414,800.00 sale price of the property, Anderson paid taxes, fees, costs, and obligations on the property. She maintained that after the property sold, there were insufficient funds to refund the Oroses' down payment and that she wanted to make it even so that both she and the Oroses "lost the same amount." Anderson paid Oros $32,381.

On February 22, 2013, the Oroses sued Anderson for the remainder of the down payment.[1] The Oroses also requested interest and attorney fees and costs. The Oroses sued based on breach of contract, conversion, and breach of constructive or implied trust. The lawsuit proceeded to a jury trial. At trial, Anderson defended against enforcement of the Agreement primarily based on duress—that Anderson felt her economic livelihood was at stake because of Street's threats. After a jury rendered its verdict, on July 10, 2014, the trial court entered judgment in favor of the Oroses for $106,831.52 ($50,644.00

---

[1] The Oroses sued for $52,644.00 even though the property sold for less than $450,000.00.

principal amount, $27,006.43 prejudgment interest, $3,183.09 in costs and expenses, and $25,998.00 in attorney fees). Anderson appeals.

DISCUSSION

Anderson contends that the trial court erred when it excluded evidence and testimony relating to ARE's claims. Anderson also argues that the trial court erred when it denied her request to amend the pleadings to add the affirmative defense of offset. Anderson further asserts that the trial court erred when it granted the Oroses' motion for an award of prejudgment interest and when it granted the Oroses' an excessive award of attorney fees.

## I.   ARE's Claims

On June 3, 2014, the Oroses moved in limine to exclude any argument or evidence as to any claims and issues belonging to ARE. The Oroses asserted that Anderson had no standing to sue or assert claims on behalf of the corporation. On June 5, 2014, Anderson argued—for the first time in her response to the motion in limine—that ARE's claims passed to the Andersons personally when ARE was administratively dissolved in 2010, because the Andersons were the sole shareholders.

On June 9, 2014, the day before opening statements, the trial court held a hearing on the motions in limine. The trial court granted the Oroses' motion in limine precluding Anderson from offering evidence, asserting, or arguing any claims or defenses that belong to ARE. The trial court stated that ARE is not a party to the lawsuit and that Anderson had not previously alleged that she is a successor to the corporation or that she was asserting a claim on behalf of the corporation. It stated, "I don't think it's fair now to mush things together and allow [a] claim by a corporation or to allow [Anderson], who

5

has not alleged that she's a successor to the corporation, to assert the claim on behalf of the corporation."

Anderson argues that the trial court erred in excluding the evidence, because it wrongly concluded that the claims belonged to the corporation, rather than Anderson personally.[2] It did not err. The trial court properly excluded any claims and damages belonging to the corporation. More importantly, it concluded that Anderson was untimely in asserting the claims and alleging that they belonged to her. In effect, Anderson argues that when the trial court granted a motion in limine the day before trial, it improperly refused to allow her to amend her answer and counterclaim to raise those arguments.[3]

The amendment of a party's pleadings is governed by CR 15. CR 15(a) provides that a party may amend its pleadings only by leave of the court or by written consent of the adverse party. The purpose of CR 15 is to facilitate a proper decision on the merits. Herron v. Tribune Publ'g Co., 108 Wn.2d 162, 165, 736 P.2d 249 (1987). While leave is to be freely given, leave should not be granted where prejudice to the opposing party would result. Caruso v. Local Union No. 690 of Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., 100 Wn.2d 343, 349, 670 P.2d 240 (1983). The court considers factors such as undue delay and unfair surprise when determining prejudice. Herron, 108 Wn.2d at 165. A court may also consider whether the amendment to the

---

[2] A trial court's decision to exclude evidence will be reversed only where it has abused its discretion. Kappelman v. Lutz, 167 Wn.2d 1, 6, 217 P.3d 286 (2009). A trial court abuses its discretion when its ruling is manifestly unreasonable or based on untenable grounds. Ryan v. State, 112 Wn. App. 896, 899, 51 P.3d 175 (2002).

[3] Anderson is ostensibly challenging this ruling so that she can assert evidence that the Oroses breached the buyer's agency agreement with RE/Max and ARE by refusing to go through with the purchase of the Renton property and that the Oroses breached an oral agreement that Oros would provide labor for the remodel. And, because she seeks to place ARE's damages before the jury.

6

complaint is likely to result in jury confusion, the introduction of remote issues, or a lengthy trial. Id. at 165-66. The amendment of pleadings is addressed to the sound discretion of the trial court, whose determination will be overturned on review only for abuse of such discretion. Walla v. Johnson, 50 Wn. App. 879, 882, 751 P.2d 334 (1988).

Here, the trial court provided five bases for its ruling: (1) Anderson did not allege that she was a successor to the corporation in the pleadings, (2) Anderson did not allege that she was asserting a claim on behalf of the corporation, (3) lack of timeliness, (4) confusion of the jury, and (5) fairness to the Oroses.[4]

It was not until Anderson's response to the Oroses' motions in limine on June 5, 2014—a week before trial—that Anderson first asserted that ARE's claims passed to her personally. When Anderson answered the complaint and presented counterclaims, she asserted that ARE entered into the relevant agreements and transactions, rather than her personally. Specifically she asserted that the Oroses breached two separate agreements with ARE. As a result of the alleged breaches, Anderson sought damages from the Oroses including compensation for the labor and services ARE expended to remodel the property. Moreover, Anderson sought relief in her answer to have ARE added as a necessary party to the lawsuit based on her counterclaims. But, she did not disclose ARE's corporate dissolution, did not plead the transfer of ARE's claims to her personally, and did not take the steps required to add ARE as a party. ARE did not intervene.

Anderson waited until the eve of trial to present evidence that ARE was administratively dissolved, that ARE's claims belonged to her, and that she intended to

---

[4] It could have added that Anderson never filed a proper written motion seeking leave to amend to add these claims as required by CR 15(a).

7

personally assert those claims on behalf of the corporation. Anderson claimed that the delay was justified, because she did not determine until less than two weeks before trial that the corporation had been administratively dissolved. But, Anderson did not mention this theory until she responded to the Oroses' motions in limine on June 9, 2014—less than one week before trial. And, even then, she had not added ARE as a necessary party.

Allowing the amendment of the pleadings or a change in theory based upon different circumstances than those set forth in the original pleading, after undue delay, would have constituted unfair surprise and would have been prejudicial to the Oroses. See Wilson v. Horsley, 137 Wn.2d 500, 507, 974 P.2d 316 (1999) (raising new issues on the eve of trial is considered unfair surprise); id. at 515 (Sanders, J., concurring in part/dissenting in part) (stating that an amendment should be allowed when it seeks only to assert a new legal theory based upon the same circumstances set forth in the original pleading); Herron, 108 Wn.2d at 165 ("The factors a court may consider in determining prejudice include undue delay and unfair surprise.").

The trial court did not abuse its discretion when it granted the Oroses' motion in limine excluding these late claims.[5]

## II. Offsetting Damages

Anderson argues that the trial court erred in not allowing the jury to consider her personal damages as an offset to the Oroses' claims.

---

[5] Accordingly, whether ARE was actually administratively dissolved or whether ARE's claims automatically transferred to the Andersons is immaterial. And, because we conclude that the trial court did not abuse its discretion in excluding ARE's claims and damages, we conclude that the trial court did not err when it excluded exhibit 28—a ledger listing ARE's remodel expenses.

In her counterclaims, Anderson asserted that Oros orally agreed to provide substantial labor and services toward the rehabilitation, remodel, and sale of the property. She claimed that both ARE and Oros would be paid an hourly rate for any labor performed readying the property for sale and that such payment would come from the proceeds of the sale. The counterclaim stated that the agreement was between ARE and Oros.

Responsive to this counterclaim, the Oroses moved in limine to exclude evidence of an "alleged oral agreement" between the parties. The Oroses argued that Anderson had no standing to assert the counterclaim belonging to ARE. And, they argued that even if Anderson personally was the contracting party in the alleged oral agreement instead of ARE, admission of the oral agreement was barred by the statute of limitations for oral agreements. Despite the fact that Anderson's counterclaim specifically stated that the agreement about the remodel expenses was between ARE and Oros, at the motion in limine hearing, Anderson argued that the alleged oral agreement was between her personally and Oros. Because it could not determine the parties to or terms of the alleged oral agreement, the trial court denied the motion in limine to exclude evidence of such an oral agreement.

After Anderson rested at trial, the Oroses made a motion under CR 50 to dismiss Anderson's counterclaim seeking damages based on the alleged oral agreement. This time, rather than emphasizing the expiration of the statute of limitations for oral agreements or the fact that ARE might have been the contracting party, the Oroses claimed that Anderson was unable to identify specific damages personal to her under the alleged oral agreement. The Oroses argued that even if the oral agreement existed

between Anderson personally and Oros, and provided Anderson the potential to claim damages, she could not identify those specific, personal damages.

The trial court ultimately concluded that the statute of limitations on the alleged oral agreement ran before the Oroses filed the complaint. Therefore, the trial court dismissed Anderson's counterclaim of the oral contract with respect to the work that was to be done on the property. After the trial court ruled, Anderson argued in response that even if the statute of limitations had already ran on the oral agreement, precluding her counterclaim, she was still able to request a setoff against any amount the jury awarded the Oroses. At this point—the third day of trial after Anderson rested—Anderson moved to amend the pleadings to include an affirmative defense for offset of damages. The Oroses objected and the trial court stated that, "I am going to deny any motion to amend the pleadings at this late stage. It's just too late."

Anderson now argues that the basis of the trial court's ruling was incorrect because statute of limitations had not run against defenses arising out of the transactions sued upon. But, she misrepresents the issue on appeal. The trial court relied on the statute of limitations to dismiss Anderson's <u>counterclaim</u>—not Anderson's request to add the affirmative defense of offset. The trial court denied Anderson's request to offset damages under CR 15, because she sought leave to add the defense too late.[6] Thus, the issue is

---

[6] It is worth noting that during the hearing on the motions in limine, counsel for the Oroses and the trial court had a discussion about whether Anderson would be precluded from bringing offset as an affirmative defense even if the trial court granted the motion in limine limiting evidence of an oral agreement on statute of limitations grounds. Counsel for the Oroses conceded that had Anderson pleaded that affirmative defense, the statute of limitations would not preclude it as it would for the counterclaim. The trial court stated that it did not think Anderson had pleaded offset as a defense. Anderson did not say anything at that point and waited until after she rested to move to amend.

10

whether the trial court abused its discretion under CR 15 when it denied Anderson's request to amend the pleadings to add the affirmative defense.

Anderson argues that the trial court's denial of her request was an abuse of discretion and manifestly unfair. Anderson cites to CR 15(b) and argues that courts are required to liberally construe the rule to allow amendment when the issues are raised and adjudicated at trial. Anderson claims that even though she did not directly raise the issue of offset in her pleadings, she was claiming throughout the proceedings that Oros should share in the costs to renovate the property.

CR 15(b) states that issues not raised by the pleadings will be treated as if they were if such issues are "tried <u>by express or implied consent of the parties</u>." (Emphasis added.) Amendment under CR 15(b) cannot be allowed if actual notice of the unpleaded issue is not given, if there is no adequate opportunity to cure surprise that might result from the change in the pleadings, <u>or</u> if the issues have not in fact been litigated with the consent of the parties. <u>Harding v. Will</u>, 81 Wn.2d 132, 137, 500 P.2d 91 (1972).

Here, the Oroses quite clearly did not consent to the admission of evidence of the oral agreement for offset purposes, as is plainly evidenced by their motion in limine to exclude that evidence and their later CR 50 motion to dismiss the counterclaim related to the oral agreement. And, Anderson does not identify anything in the record indicating that the Oroses impliedly consented.

Additionally, granting leave to amend to add the affirmative defense of offset for Anderson's personal damages would have been futile. Anderson was unable to identify any specific personal damages. Although the trial court excluded evidence of the alleged oral remodel labor agreement and any damages stemming therefrom, it had allowed

Anderson to testify as to any personal damages incurred as a result of the remodel. Specifically, the trial court stated that "I think it's appropriate to allow . . . evidence of damages suffered by the individual, not by the corporation." And, Anderson testified that some of the money for the remodel came out of the Andersons' personal credit line. But, when cross-examined by the Oroses' counsel, Anderson could not answer specifically how much she was asking the jury to award her in damages. Denying a motion for leave to amend is not an abuse of discretion if the proposed amendment is futile. Rodriguez v. Loudeye Corp., 144 Wn. App. 709, 729, 189 P.3d 168 (2008).

Because Anderson was unable to provide a specific amount of personal damages based on the costs of the remodel that she wished to offset, the amendment would have been futile.[7] Consequently, we conclude that the trial court did not abuse its discretion when it denied Anderson's late request to amend the pleadings to add the affirmative defense of offset.

III. Prejudgment Interest

Anderson also argues that the trial court erred in granting the Oroses' motion for an award of prejudgment interest. The trial court granted the Oroses' motion for prejudgment interest in the amount of $27,006.43. This interest constituted a little more

---

[7] We similarly conclude that the trial court did not err when it denied Anderson's request for a jury instruction related to offset of damages.

Moreover, in light of our conclusion, Anderson's parol evidence argument is without merit. The Agreement stated that the Oroses were to be paid out of the "proceeds of the closing of the sale of the Property." Anderson claims that the definition of "proceeds" included the deductions for the costs to renovate the property and that the trial court improperly disallowed parol evidence with respect to the definition of the term "proceeds." But, because we conclude that the trial court properly excluded evidence of ARE's claims and damages and because Anderson was unable to prove any personal damages when given the opportunity to do so, whether the renovation costs should have first been deducted from the Oroses' reimbursement is moot.

12

than 53 percent of the principal amount of the judgment awarded by the trial court ($50,644.00).

RCW 4.56.110(1) limits the amount of interest a court may award in an action on a breach of contract. It provides that judgments shall bear interest at the rate specified in the contracts provided that the interest rate is set forth in the judgment. Id. Notwithstanding RCW 4.56.110(1)'s focus on judgments, Anderson relies on a provision in the Agreement which states that no interest shall accrue on the unpaid balance of the Oroses' down payment. The balance amount was due in full in 180 days. It is a fair reading of the provision that the no interest clause applied only until the due date. And, consistent with that reading, the trial court did not award interest from the date of the down payment to the date of sale. Moreover, the interest provision in the Agreement did not address default or judgment interest under RCW 4.56.110(1). The principal amount due on the note was liquidated. The trial court applied the proper interest rate pursuant to RCW 4.56.110(4).

Next, Anderson notes that the trial court has discretion to disallow prejudgment interest during periods of unreasonable delay in completing litigation that is attributable to the claimants. She contends that the Oroses sat "on the claim for years, never once requesting reimbursement and allowing the Andersons to negotiate a settlement or pay the amount." The trial court reasoned that by failing to pay the Oroses, Anderson wrongfully retained money she was obligated to pay them and deprived them of the use of those funds. And, it concluded that it would be inappropriate to reduce the interest, because the Oroses commenced the litigation within the applicable statute of limitations period. Anderson fails to produce authority upon which we can conclude that an award

of prejudgment interest under these circumstances—when the Oroses brought suit within the statute of limitations period—constitutes an abuse of discretion.

IV.    Attorney Fees

Anderson argues that the trial court erred when it awarded "excessive" attorney fees to the Oroses. Specifically, she argues that the amount of fees awarded is unreasonable, because it is greater than the principal judgment amount when combined with the prejudgment interest. This court reviews an award of attorney fees for abuse of discretion. Steele v. Lundgren, 96 Wn. App. 773, 780, 982 P.2d 619 (1999).

Here, the Agreement provides for attorney fees in paragraph 1(k).

> If either party hereto breaches any provisions of this Agreement, the breaching party shall pay to the non-breaching party all attorneys' fees and other costs and expenses incurred by the non-breaching party in enforcing the Agreement or preparing for legal or other proceedings regardless of whether suit is instituted. If it becomes necessary for either party to employ legal counsel or to bring an action at law or other proceeding to enforce any of the terms, covenants, or conditions of this Agreement, the prevailing party in any such action or proceeding shall be entitled to recover its costs and expenses incurred in such action from the other party, including, without limitation, expert witness fees and costs, consultant fees and costs, reasonable attorneys' fees and costs, set by the Court and not a jury, at both trial and appellate levels.

The trial court awarded the Oroses $25,998.00 in attorney fees. Anderson cites to Singelton v. Frost, 108 Wn.2d 723, 731-32, 742 P.2d 1224 (1987) and RPC 1.5 for the assertion that the trial court may reduce the award of fees to that which is reasonable in light of the amount recovered and fix a fee that is proportional to the recovery. This provides the trial court permissive authority to make a reduction—it does not require a reduction. Secondly, the amount of money involved in the controversy is only one of several factors to be considered in reducing a fee award. See Frost, 108 Wn.2d at 731.

14

And, the trial court properly considered all the relevant factors and criteria when considering the reasonability of the fee award here.

Moreover, the amount of money involved in the controversy, excluding costs and fees, was $50,644.00 plus the prejudgment interest of $27,006.43[8]—$77,650.43. The attorney fee award was $25,998.00. Anderson provides no authority for the assertion that an attorney fee award constituting roughly a third of the amount of money claimed in a lawsuit is excessive or per se unreasonable. Therefore, we conclude that the trial court did not abuse its discretion when it awarded the Oroses attorney fees in the amount that it did.

Anderson also argues that the Oroses should not be allowed to recover attorney fees for unsuccessful motions, witness fees for a witness under subpoena, and fees that were under an increased rate midway through the case. But, Anderson has failed to provide any authority upon which we can conclude that the trial court abused its discretion in awarding these fees.

V.  Fees and Costs on Appeal

The Oroses argue that they are entitled to attorney fees and costs incurred on appeal pursuant to RAP 18.1 and the terms of the Agreement. This court will award attorney fees to the prevailing party only on the basis of a private agreement, statute, or a recognized ground of equity. Equitable Life Leasing Corp. v. Cedarbrook, Inc., 52 Wn.

---

[8] Anderson excludes the prejudgment interest when considering the amount of the Oroses' claim in the lawsuit and the comparative reasonability of the fee award. But, as discussed above, the Oroses requested prejudgment interest in their initial complaint and the trial court's award of that prejudgment interest was proper.

App. 497, 506, 761 P.2d 77 (1988). Here, the Agreement provides for attorney fees and costs.

The Oroses prevailed on every issue in this appeal. We therefore award them attorney fees and costs subject to their compliance with RAP 18.1(d).

We affirm.

_____
Appelwick, J.

WE CONCUR:

_____        _____
Spearman, C.J.                          Cox, J.