IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| MARGARITA SMITH, | ) | No. 78948-1-I |
| | ) | |
| Appellant, | ) | DIVISION ONE |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| YVONNE MARKGRAF and RON | ) | |
| STOEHR, individually and as a marital | ) | |
| community, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | FILED: December 9, 2019 |

HAZELRIGG-HERNANDEZ, J. — Margarita Smith sued Yvonne Markgraf and Ron Stoehr[1] after a dispute arose from an appointment to clean Markgraf and Stoehr's home. As a result of the dispute, Markgraf posted an unflattering review of Smith's company on Yelp, which she revised several times. The majority of Smith's claims were dismissed on Markgraf and Stoehr's summary judgment and CR 12(b)(6) motions and the court denied Smith's request for a permanent injunction. Because one of Smith's claims falls outside the scope of the Consumer Protection Act[2] and because she failed to allege facts sufficient to survive the challenges of defense motions as to her remaining claims, we affirm.

---

[1] Smith's pleadings misspell his last name as Stoer.
[2] Chapter 19.86, RCW.

## FACTS

In May 2015, Yvonne Markgraf called Margarita Smith to make an appointment for BioMaids to come clean her home a week later. The parties agreed on a 1 p.m. appointment and an hourly rate of $40 per employee. Smith was late the day of the cleaning and tried to call to let Markgraf know, however the number she had was incorrect. Smith was eventually able to call Markgraf and inform her she would be at the house no earlier than 2:30 p.m. When Smith arrived at 2:40 p.m., she was shown the home and began cleaning.

BioMaids employee, Kalaya Eckle, arrived at 3:30 p.m. and joined Smith in cleaning. After the kitchen was cleaned, Smith heard someone in Markgraf's family cooking in the kitchen and playing the piano in the dining room. Eckle broke a candle, but Markgraf did not accept her offer to pay for it since it would come out of Eckle's own pay check. At 6:30 p.m. Markgraf and her children left to go to a school function. Markgraf's partner, Ron Stoehr, arrived at 6:50 p.m. and told Smith and Eckle that they needed to leave. Smith asked for more time and Stoehr agreed they could stay for one more hour. Smith and Eckle stopped cleaning at 8 p.m. and left an invoice totaling $380.

Soon after, Markgraf emailed Smith letting her know she did not agree to the $380 charge and that she would pay her $300 as Smith had been late, a candle was broken, and areas had been left uncleaned. Smith offered to pay for the candle but insisted the full amount was due. They exchanged a number of emails in their dispute over the charges, including the quality and scope of cleaning.

In June 2015, Markgraf sent Smith a check for $300 and wrote a review about her BioMaids experience on Yelp.[3] The review on Yelp gave BioMaids a one star rating and included such statements as:

- "[Smith] arrived over 3 hours late."
- "[T]hey never touched the basement."
- "They left the master bed dusty, the beds short sheeted, the hardwood floors on the main floor so dirty I had to mop them, cobwebs left on lighting fixtures."
- "I am sure they used only water to clean with."
- "She instead looked up my personal email address (that I did not disclose to her or communicate with her from)."
- "I also heard [Smith] talking to [her] helper in a completely unprofessional and mean manner, that upset me."

Markgraf also wrote a similar review on the Better Business Bureau (BBB) website in June 2016. Further emails were exchanged and Smith posted a response to the review on Yelp. Smith did not cash Markgraf's check and demanded that she pay through an online portal. Markgraf said the portal was not functional, but ultimately was able to pay $270 online.

In October 2015, Smith filed a small claim against Markgraf for "libelious [sic] statements posted on [the] internet" and sought damages of $5000. Markgraf filed a counterclaim alleging damage to her stainless steel refrigerator and seeking $2100 in damages. The court dismissed Smith's defamation claim for lack of jurisdiction and awarded Markgraf $1574.99 in damages for the refrigerator. The small claims judgment against Smith was reversed by the superior court on appeal. Markgraf's Yelp review was updated three times prior to Smith refiling the case in superior court. The last review by Markgraf was in January 2017. That review

---

[3] A website and cell phone application utilized as a business directory, online reservation services and collection of crowd-sourced business reviews.

increased the Biomaids rating to five stars and attributed the rating increase to the lawsuit Smith had initiated. Markgraf also outlined the chronology of the litigation over the dispute.

Smith's new suit against Markgraf and Stoehr in superior court alleged: 1) defamation per se, 2) five separate claims of defamation (one for each version of the Yelp review and one for the BBB review), 3) false light, 4) violation of the Consumer Protection Act (CPA), 5) breach of contract, and 6) intentional infliction of emotional distress. Smith sought both money damages and injunctive relief. The defamation per se claim and CPA claims were dismissed under CR 12(b)(6) on Markgraf's motion. The defamation, intentional infliction of emotional distress, and false light claims were dismissed at summary judgment, again on Markgraf's motion. Smith then accepted a settlement offer as to the breach of contract claim, but did not abandon her claim to injunctive relief. The trial court dismissed that request as there was no surviving claim that could have supported an injunction.

Smith timely appealed, assigning error to the dismissal of her claims and request for injunctive relief.

ANALYSIS

I.      Claims Dismissed on CR 12(b)(6) Motion

In reviewing a trial court's dismissal of a claim under CR 12(b)(6), we apply a de novo standard. Tenore v. AT & T Wireless Servs., 136 Wn.2d. 322, 329-30, 962 P.2d 104 (1998). A dismissal under CR 12(b)(6) "is appropriate only if it appears beyond doubt that the plaintiff cannot prove any set of facts which would

justify recovery." Id. at 330. "[A] plaintiff's allegations are presumed to be true and a court may consider hypothetical facts not included in the record." Id.

A.    Defamation Per Se Claim

A defamation per se claim requires that the statement at issue "(1) exposes a living person to hatred, contempt, ridicule or obloquy, to deprive him of the benefit of public confidence or social intercourse, or (2) injures him in his business, trade, profession or office." Caruso v. Local Union No. 690 of Int'l Bhd. Of Teamsters, 100 Wn.2d 343, 353, 670 P.2d 240 (1983).

In Life Designs Ranch, Inc. v. Sommer, Division Three of this court upheld a summary judgment dismissal of a defamation per se claim. 191 Wn. App. 320, 364 P.3d 129 (2015). In Life Designs, a father sent his son to a substance abuse aftercare program for young adults. After a dispute with the program over billing, the father created a spoof website, lifedesignsranchinc.com, on which he published numerous statements about the program. Id. at 326-27. The website's "About Us" section indicated that it existed "to protect people from the financial and emotional distress" that Life Designs creates. Id. at 327. This court ruled that as a matter of law, the statements on the website did not rise to the level of "extreme" necessary to constitute defamation per se and affirmed the dismissal of the claim on summary judgment. Id. at 329-30. This court made clear that the facts before them in Life Design were even less severe than in Caruso, which also rejected a defamation per se claim. Id.

In Caruso, an article urging readers to avoid patronizing a business was published in a weekly pamphlet mailed to union members. 100 Wn.2d at 346. The

article accused the business of harassing laborers who parked at the business to make deliveries nearby and eventually impounding their equipment. Id. After the publication was distributed four times, people began calling the business to tell the owner they would not shop there. Id. at 347. Other people called the business making derogatory and profane statements about the owner. Id. Sales dropped following the publications. The Supreme Court held the trial judge improperly instructed the jury when it explained that if they found the articles were false and defamatory, they were libelous per se which allowed for presumption of damages. Id. at 354.

The statements by Markgraf at issue here do not rise to the level of those in Life Designs or Caruso, which were held insufficient to constitute defamation per se. In the present case, as with Caruso and Life Designs, Smith is focused on the second prong of defamation per se: "injures him in his business, trade, profession or office." Caruso, 100 Wn.2d at 353. However, Smith's complaint alleges facts far less charged than those in Life Designs and Markgraf's statements were not accompanied by any threatening behavior or comments like in Caruso. The allegations in the complaint reference the Yelp review which only included critique and recollection of Markgraf's experience with BioMaids. The most extreme claims in the Yelp reviews would be that Smith used "horribly cruel and abusive language to her employee" and that Smith is an "unstable person." These words alone are not enough to constitute defamation per se. Smith's complaint does not contain sufficient allegations to withstand the CR 12(b)(6) motion even if hypothetical facts were assumed. The trial court properly dismissed the defamation per se claim.

B.    Consumer Protection Act Claim

Similarly, the allegations in Smith's complaint were insufficient to establish a claim under the CPA in Washington. In order to establish a claim under the CPA, a plaintiff must establish: "1) unfair or deceptive act or practice; 2) occurring in trade or commerce; 3) public interest impact; 4) injury to plaintiff in his or her business or property; 5) causation." Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wn.2d 778, 780, 719 P.2d 531 (1986).

Washington courts have given broad meaning to "trade" and "commerce." Id. at 785. "The CPA, on its face, shows a carefully drafted attempt to bring within its reaches every person who conducts unfair or deceptive acts or practices in any trade or commerce." Id. (quoting Short v. Demopolis, 103 Wn.2d 52, 61, 691 P.2d 163 (1984)).

Even assuming the acts at issue here did occur within trade or commerce, the complaint does not contain allegations to rise to the level of the public interest requirement. Originally only the Attorney General was authorized to bring suit under the CPA. Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc., 162 Wn.2d 59, 73, 170 P.3d 10 (2007). In 1971, the legislature authorized private rights of action to assist in the enforcement of the CPA. Id. With this expansion, the courts construed the CPA "to require that a private plaintiff show not only that a defendant's practices affect the private plaintiff but that they also have the potential to affect the public interest." Id. at 74. This court recently explained that the reason for such a requirement is "'to rule out those deceptive acts and practices that are unique to the relationship between plaintiff and defendant.'" State v.

Mandatory Poster Agency Inc., 199 Wn. App. 506, 521, 398 P.3d 1271 (2017) (quoting Behnke v. Ahrens, 172 Wn. App 281, 293, 294 P.3d 729 (2012)).

When assessing the public interest element in a private dispute, the Court examines the factors set out in Hangman Ridge:

> (1) Were the alleged acts committed in the course of defendant's business? (2) Did defendant advertise to the public in general? (3) Did defendant actively solicit this particular plaintiff, indicating potential solicitation of others? (4) Did plaintiff and defendant occupy unequal bargaining positions?

105 Wn.2d at 790-91. Despite the fact that a plaintiff need not establish all of these factors, and that none is dispositive, when applied to the case at hand, it is clear that Markgraf's conduct of posting a Yelp review does not meet the public interest element required to establish a CPA claim. First, Markgraf's review did not occur in the course of her business; she is the consumer/customer in this interaction. Second, the Yelp review did not "advertise" any service or product. Third, Markgraf's posting of her Yelp review did not solicit Smith in any way; their transaction had already occurred. Finally, Markgraf and Smith were not in unequal bargaining positions as to the review. In fact, Smith availed herself of the opportunity to respond directly to the review and offer her perspective on Markgraf's assertions.

Markgraf's conduct of posting a Yelp review is far outside the facts of any Washington case examining an impact on public interest in the context of the CPA. Prior cases where challenged actions were found to potentially affect public interest involved deceptive mailers designed to look like they came from the government that were sent to over 79,000 people and appeared to require $125

payments to the company or a case that examined rental agreements that were potentially used by over 500 mobile home park owners or management. See Mandatory Poster Agency, Inc., 199 Wn. App. 506; Holiday Resort Community Ass'n v. Echo Lake Assoc., LLC, 134 Wn. App. 210, 135 P.3d 499 (2006). Smith's complaint fails to establish that an unflattering Yelp review by Markgraf has the potential to affect the public interest. Her CPA claim falls well outside of the intended scope of the statute and was properly dismissed pursuant to Markgraf and Stoehr's CR 12(b)(6) motion.

## II. Dismissal of Defamation Claims on Summary Judgment

We review summary judgment decisions de novo. Owen v. Burlington N. Santa Fe R.R. Co., 153 Wn.2d 780, 787, 108 P.3d 1220 (2005). We assume all facts and reasonable inferences in favor of the nonmoving party. Id. at 787. Summary judgment is proper if the court establishes that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c). Summary judgment plays an important role in defamation cases due to the potential chilling effect a pending case can have on free speech. Mark v. Seattle Times, 96 Wn.2d 473, 485, 635 P.2d 1081 (1981).

To prove defamation a party must establish, 1) falsity, 2) an unprivileged communication, 3) fault, and 4) damages. Momah v. Bharti, 144 Wn. App. 731, 739, 182 P.3d 455 (2008). At the summary judgment stage, a "prima facie case must consist of specific, material facts, rather than conclusory statements, that would allow a jury to find that each element of defamation exists." LaMon v. Butler, 112 Wn.2d 193, 197, 770 P.2d 1027 (1989). If there are insufficient facts to

establish one of the elements, the defamation claim fails as a whole. Smith's defamation claim was dismissed for failing to meet both the falsity and damages elements. Smith's inability to prove damages is the most evident, while the falsity element hinges on whether the statements in the review can be characterized as fact or opinion. The trial court ruled that they were opinion.

The plaintiff must prove that the damages sought are causally related to the alleged defamation in order to make out a prima facie case. Life Designs, 191 Wn. App. at 333. In Life Designs, the court held not only that the upset father's statements in the spoof website likely did not rise to the level of defamation, but that damages had not been proven. Id. at 333-35. Life Designs Ranch only had evidence of a decline in referrals, some unclear claims about not making referrals to the ranch, and no other apparent changes that accounted for the referral decline. Id. at 334. There was no evidence that anyone had been influenced or not chosen Life Designs Ranch because of the father's spoof website. Id. The Life Designs court rejected the argument that this evidence merely showing coincidence in a decline in profit was sufficient to prove causation. Id. at 334-35.

Smith acknowledged during the trial court's summary judgment hearing that she had an issue with proving causation. Smith offered an unsworn report by an economic damages expert that demonstrated a decline in BioMaids' revenue in 2014, prior to the first of Markgraf's reviews. The report did not analyze various factors to establish the potential reasons for the decline. Smith admitted to this deficiency in the report during the oral argument on summary judgment. The only evidence submitted by Smith to potentially connect the loss in revenue to the Yelp

review was the documentation of monthly website visits for BioMaids and the monthly Yelp page visits. Smith acknowledged in her deposition that she does not keep very precise business records, especially delineating profits from general revenue. She conceded at oral argument on appeal that the Yelp review and her posted response referenced the lawsuit she initiated against her already dissatisfied customer. Among the other potential factors not explored in her expert report to explain the decline in revenue, there was no analysis offered as to the potential revenue impact of Smith's decision to litigate this dispute. There simply was no evidence demonstrating a causal connection between Markgraf's reviews and any revenue loss to BioMaids. As Smith failed to prove causation and damages at the time of summary judgment, the trial court's dismissal of the defamation claims was proper and we need not consider the falsity argument.

## III.  Injunctive Relief

Finally, Smith challenges the denial of her motion for a permanent injunction against Markgraf to prevent her "from posting any additional review or complaints about [Smith] on Yelp, Better Business Bureau, or elsewhere." However, at the point that the trial court addressed Smith's request for the injunction, only a breach of contract claim remained.[4] Smith acknowledged this fact in her opening brief, "[t]he trial court dismissed Ms. Smith's claim for injunctive relief based on its finding that Ms. Markgraf did not make defamatory statements."

---

[4] Markgraf offered to settle that remaining claim for $110, representing full payment of the original invoice amount, and Smith had accepted.

On appeal, a ruling on a permanent injunction is reviewed for abuse of discretion. Hoover v. Warner, 189 Wn. App. 509, 528, 358 P.3d 1174 (2015). "Trial courts have broad discretionary power to fashion injunctive relief to fit the particular circumstances of the case before it." Id. "A trial court necessarily abuses its discretion if the decision is based on untenable grounds or the decision is manifestly unreasonable or arbitrary." Kucera v. State, Dept. of Transp., 140 Wn.2d 200, 209, 995 P.2d 63 (2000). An injunction is a distinctively equitable remedy and will not be granted where there is a "plain, complete, speedy, and adequate remedy at law." Id.

To be entitled to an injunction, the party seeking the action must establish 1) "a clear legal or equitable right," 2) "a well-grounded fear of immediate invasion of that right," and 3) that "the act complained of will result in . . . substantial injury." Huff v. Wyman, 184 Wn.2d 643, 651, 361 P.3d 727 (2015). To determine whether a clear legal or equitable right exists the trial court examines the likelihood that the party seeking the injunction will prevail on the merits. Id. at 652.

Smith only had a breach of contract claim remaining which was expected to settle that day. There were no other claims left to serve as a basis for injunction despite Smith's assertion that the dismissed defamation claims would properly support injunctive relief. The dismissal of those claims demonstrates that Smith would not prevail on the merits, therefore she failed to demonstrate that a clear legal or equitable right existed. As such, we hold that the trial court did not err in denying this request at the summary judgment stage once the case had effectively been resolved.

Affirmed.

WE CONCUR: